# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| WINSLOW MARINE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| J. SUPOR & SON TRUCKING & RIGGING, INC., | ) ) ) |
| | ) |
| Defendant and Third-Party Plaintiff, | ) ) )   Docket No. 2:15-cv-312-NT |
| | ) |
| v. | ) |
| | ) |
| IBERDROLA ENERGY PROJECTS, INC., | ) ) ) |
| | ) |
| Third-Party Defendant. | ) |

## ORDER ON MOTION TO VACATE DEFAULT JUDGMENT

Third-Party Defendant Iberdrola Energy Projects, Inc. ("**IEP**") moves pursuant to Federal Rule of Civil Procedure 60(b)(1) to vacate the default judgment entered against it. (ECF No. 30). Supor & Son Trucking & Rigging ("**Supor**") opposes the motion. (ECF No. 32). I find that the circumstances of this case constitute "mistake" or "excusable neglect," and I will grant the motion to vacate.

## FACTS AND PROCEDURAL BACKGROUND

In April 2015, IEP contracted with Supor to perform services, including transporting concrete pilings from a shore side facility in Portsmouth, New Hampshire to a waterfront project in Salem, Massachusetts. Decl. of Elias Lopez Salmeron ¶ 3 (ECF No. 30-3). Supor in turn contracted with Winslow Marine, Inc.

("**Winslow Marine**") to provide tug boat and barge services between Portsmouth, New Hampshire and Salem, Massachusetts to transport the pilings. Compl. ¶ 9 (ECF No. 1). Supor completed the contract work, and IEP paid Supor the full amount of the lump sum contract. Lopez Salmeron Decl. ¶ 5.

On July 24, 2015, after work was complete, Supor sent IEP a change order for an additional $216,261.87 claiming that it was entitled to more money as a result of alleged "greater widths and lengths of piles on the project." Lopez Salmeron Decl. ¶ 6. IEP rejected the change order because Supor had not provided evidence of additional compensable costs. Lopez Salmeron Decl. ¶ 7; Decl. of Isabel Perez Palacio ¶ 2 (ECF No. 30-5). Thereafter, in a conversation with IEP, Supor explained that the change order was the result of invoices that included additional charges from Winslow Marine. Perez Palacio Decl. ¶ 2. Supor told IEP that it did not believe Winslow Marine's additional charges were appropriately supported. Perez Palacio Decl. ¶ 2. Supor told IEP that it thought that the additional charges were the result of Winslow Marine's inefficient loading and unloading of the barges. Perez Palacio Decl. ¶ 2. Supor asked for IEP's support in resisting Winslow Marine's request for extra compensation. Perez Palacio Decl. ¶ 2. Because Supor's explanation accorded with IEP's view that there had been no material change in the contract requirements, IEP agreed to support Supor in opposing Winslow Marine's request. Perez Palacio Decl. ¶ 2. Supor agreed to send IEP evidence to support its change order if it decided to press the issue further. Perez Palacio Decl. ¶ 2.

2

On August 6, 2015, Winslow Marine filed suit against Supor seeking compensation for the alleged overage. Compl. On October 8, 2015, Supor answered the Complaint. Answer (ECF No. 9). On October 22, 2015, Supor filed a Third-Party Complaint against IEP, asserting that IEP had not paid a change order in the amount of $216,261.87. Third-Party Compl. ¶ 12 (ECF No. 11). On October 27, 2015, the Kennebec County Sheriff served the Third-Party Complaint on CT Corporation System ("**CT Corp.**"), IEP's registered agent for service of process, in Readfield, Maine. Summons (ECF No. 16). On October 30, 2015, CT Corp. delivered the Third-Party Complaint by FedEx to the Rochester, New York address that CT Corp had for IEP. Decl. of Sergio Ruiz Gonzalez ¶ 4 & Ex. A (ECF Nos. 30-1 and 30-2). A few months earlier, however, IEP had moved its offices to Salem, Massachusetts, and in October of 2015, IEP had no employees left at the Rochester office. Ruiz Gonzalez Decl. ¶ 2. A security officer not employed by IEP signed for the package in Rochester. Ruiz Gonzalez Decl. ¶ 5 & Ex. A. What the security officer did with the Third-Party Complaint remains a mystery, but IEP has no record of ever receiving it. Ruiz Gonzalez Decl. ¶ 5.

With no responsive pleading filed, Supor moved for default against IEP on December 4, 2015. Mot. for Entry of Default (ECF No. 17). The Clerk entered a default on December 7, 2015. Order (ECF No. 18). After a judicial settlement conference attended by Supor and Winslow Marine, Supor consented to the entry of judgment against it and in favor of Winslow Marine in the amount of $470,000. Joint Stipulation of Facts (ECF No. 27). On April 20, 2016, Supor and Winslow Marine filed

a joint motion for entry of final judgment seeking default judgment against IEP. Joint Mot. for J. on Compl. and Default J. on Third-Party Compl. (ECF No. 26). On the same day, the Court entered final judgment against IEP for $216,261.87 plus interest and costs, which was the sum requested in the Third-Party Complaint. Final J. (ECF No. 28). On July 12, 2016, IEP received a letter from Supor demanding satisfaction of judgment. Ruiz Gonzalez Decl. ¶ 3. On September 1, 2016, IEP filed this motion to vacate the judgment. Mot. to Vacate Default J. and Set Answer Deadline (ECF No. 30).

## DISCUSSION

IEP acknowledges that service was properly made on its registered agent, CT Corp. IEP explains that it did not receive the Third-Party Complaint until after it learned of the default judgment because of a mistake in the delivery of service caused in part by its own failure to update its address with its registered agent. These circumstances, IEP asserts, constitute "mistake" or "excusable neglect" under Rule 60(b).

Rule 60(b) provides that on "just terms" a court "may relieve a party . . . from a final judgment" for various reasons, including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). "Because Rule 60(b) is a vehicle for extraordinary relief, motions invoking the rule should be granted only under exceptional circumstances." *Dávila-Álvarez v. Escuela de Medicina Universidad Cent. del Caribe*, 257 F.3d 58, 64 (1st Cir. 2001) (citation and internal quotation omitted). Rule 60(b) "must be applied so as to recognize the desirability of deciding disputes on

their merits, while also considering the importance of finality as applied to court judgments." *Id.* at 64 (citation and internal quotation omitted).

Excusable neglect is an "elastic concept" that requires an equitable determination that takes into account "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 392, 395 (1993); *see also Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir. 2003). Factors considered in evaluating a claim of excusable neglect "typically include such things as 'the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant acted in good faith.'" *Rivera-Velázquez v. Hartford Steam Boiler Inspection & Ins. Co.*, 750 F.3d 1, 4 (1st Cir. 2014) (quoting *Dávila-Álvarez*, 257 F.3d at 64 (applying *Pioneer* factors to a Rule 60(b) motion); *Pratt v. Philbrook*, 109 F.3d 18, 19 (1st Cir. 1997). While all relevant circumstances should be considered, the factors are not equally weighted: the reason for the delay is "by far the most critical" factor. *Dimmitt v. Ockenfels*, 407 F.3d 21, 23-24 (1st Cir. 2005); *see also Graphic Commc'n Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("the reason-for-delay factor will always be critical to the inquiry" (citations omitted)).

## I. Reason for the Delay

IEP asserts that it did not receive the Complaint "[a]s a result of a mistake in the delivery of service by the registered agent." Mot. to Vacate 6. The record indicates that IEP's registered agent—CT Corp.—was timely served with the Third-Party Complaint. Summons. On October 30, 2015, however, CT Corp. delivered the Third-Party Complaint to IEP's former office in Rochester, New York, where it was signed

for by a security guard not associated with IEP. Ruiz Gonzalez Decl. ¶ 5. Although IEP should have notified CT Corp. of its change of address, that inadvertent oversight was compounded by circumstances that were out of IEP's control. Had the security guard declined the FedEx package that he was not authorized to receive, IEP would likely have learned of the lawsuit in a timely fashion. Under these circumstances, I find that the reason for the delay was in part beyond IEP's control.

## II.  Prejudice to Supor

When it entered into the settlement agreement with Winslow Marine, Supor relied on the fact that IEP's default would allow Supor to recover some of the $470,000 it agreed to pay to Winslow Marine. Third-Party Plaintiff's Opp'n to Mot. to Vacate 9 (ECF No. 32). Supor argues that its reliance was reasonable because IEP's registered agent had been properly served. Supor further asserts that it will be prejudiced if the judgment against IEP is set aside since Supor will still be obligated to satisfy the judgment in favor of Winslow Marine without any concomitant contribution from IEP. But whether Supor will have to singularly satisfy the settlement agreement depends on the strength of its third-party claim against IEP, which remains to be litigated. Further, by choosing not to notify its former business partner that Winslow Marine was insisting on payment for the overage, and by relying on IEP's default, Supor took a chance that the default judgment would not be vacated.

## III.  Length of the Delay

A motion under Rule 60(b)(1) must be made within a reasonable time, which may be "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The motion to vacate was filed approximately

eight months after default judgment was entered and about six weeks after IEP first learned of the judgment against it.

## IV.  Good Faith

There is no question that a reasonable corporation should ensure that its registered agent can properly forward service of process. Here, IEP failed to inform CT Corp. of its new address. While, as IEP concedes, this was an error on its part, there does not appear to be any lack of good faith on IEP's part.

By contrast, Supor's hands are not entirely clean. Before the lawsuit was filed, Supor agreed to send IEP evidence to support the change order if it was going to press the matter further. Perez Palacio Decl. ¶ 2. IEP understood that the matter was closed unless it heard further from Supor. Perez Palacio Decl. ¶ 2. Because Supor never sent IEP confirming documentation of the change order as it had promised, IEP had no reason to believe that a conflict existed or that a lawsuit would be filed. Perez Palacio Decl. ¶ 2. Once judgment was entered, however, Supor sent the notice of default judgment to IEP in Salem, Massachusetts. These actions suggest that Supor knew how to notify IEP when it wanted to do so, but it chose not to advise IEP that it was pursuing the change order.

## CONCLUSION

Considering the *Pioneer* factors, weighing the reason for the delay most heavily, and recognizing the desirability of deciding disputes on their merits, I find that under these unusual circumstances, IEP has established excusable neglect

under Rule 60(b)(1). For the reasons stated above, I **GRANT** IEP's motion to vacate default judgment.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 14th day of December, 2016.